IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

HANNAH SPENCE,

    Plaintiff,

vs,

ST. THOMAS UNIVERSITY, INC.,

    Defendant.

CASE NO: 1:25-cv-21762

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMES NOW** Plaintiff, HANNAH SPENCE (hereafter "Plaintiff"), by and through the undersigned counsel, hereby sues the Defendant, ST. THOMAS UNIVERSITY, INC. (hereafter "Defendant" or the "University"), and alleges as follows:

**INTRODUCTION**

1. This is a civil action for damages arising from violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and related state law claims, brought by Plaintiff Hannah Spence against St. Thomas University. This action stems from a pattern of harassment, retaliation, and wrongful expulsion that occurred during Plaintiff's undergraduate and graduate studies at St. Thomas University between 2020 and 2023.

2. Plaintiff alleges that Dr. Abdy Javadzadeh, while serving as a professor and program director at St. Thomas University, engaged in a pattern of inappropriate

conduct and sexual harassment, including unwanted physical contact, personal advances, and creation of a hostile educational environment.

3. When Plaintiff reported this misconduct, the University not only failed to properly investigate her complaints but also engaged in retaliatory actions, culminating in her wrongful expulsion from her graduate program in September 2023.

4. These actions violated federal law, state law, and the University's own policies and procedures, causing Plaintiff to suffer lost educational opportunities, emotional distress, reputational damage, and future lost wages.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to the federal claims that they form part of the same case or controversy.

6. This Court has personal jurisdiction over Defendant St. Thomas University because it is a private educational institution that maintains its principal place of business in Miami Gardens, Florida, and regularly conducts business within this judicial district. This Court has personal jurisdiction over Defendant Dr. Abdy Javadzadeh because he is employed by St. Thomas University and resides within this judicial district.

7. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district. Specifically, the alleged sexual harassment, retaliation, and wrongful expulsion occurred at St. Thomas University's campus located at 16401 NW 37th Avenue, Miami Gardens, Florida 33054, which lies within this district.

## PARTIES

### A. Plaintiff

8. Plaintiff Hannah Spence is an adult individual residing in Miramar, FL, which is within this District.

9. At all times material to this complaint, Plaintiff was a student at St. Thomas University, first as an undergraduate student and later as a graduate student in the Criminal Justice Masters Program.

10. During the relevant period, Plaintiff maintained good academic standing at St. Thomas University and was employed by the University as a work-study student until her wrongful expulsion in September 2023.

### B. Defendant

11. Defendant St. Thomas University ("University") is a private educational institution with its principal place of business located at 16401 NW 37th Avenue, Miami Gardens, FL 33054.

12. At all times material to this complaint, St. Thomas University was and is an educational institution receiving federal financial assistance and was subject to the

requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

## GENERAL ALLEGATIONS

### A. Initial Contact and Early Interactions

13. At all material times to this Complaint, Dr. Javadzadeh was an employee and agent of St. Thomas University.

14. Plaintiff first met Dr. Javadzadeh in Spring 2020 while enrolled in his University Prep class at St. Thomas University.

15. During Spring 2021, Dr. Javadzadeh initiated an independent study arrangement with Plaintiff, which was to occur during the following Fall 2021 semester.

16. Starting in Spring of 2021 and carrying throughout the independent study and subsequent interactions, Dr. Javadzadeh engaged in unwanted physical contact with Plaintiff, including requesting hugs and kissing her cheek without consent.

17. Dr. Javadzadeh obtained Plaintiff's personal phone number without her permission and began sending her text messages and WhatsApp communications of an increasingly personal nature.

### B. Pattern of Inappropriate Conduct

18. Between Spring 2021 and Spring 2022, Dr. Javadzadeh engaged in numerous inappropriate behaviors toward Plaintiff, including:

    a. Making unwanted comments about Plaintiff's physical appearance;

    b. Sharing inappropriate personal information about his private life;

4

    c. Using sexual innuendos in conversations and discussed engaged in sexual activity with her;

    d. Initiating unwanted physical contact;

    e. Creating situations to be alone with Plaintiff; and

    f. Making suggestive comments about spending time together outside of academic settings.

19. Dr. Javadzadeh frequently missed or cancelled scheduled classes and/or independent study sessions without proper notice, and when classes were held, he often reduced class times inappropriately.

20. Dr. Javadzadeh created a hostile learning environment by combining inappropriate personal attention with academic authority, making Plaintiff uncomfortable and fearful about potential academic consequences.

**C. Initial Reporting and University's Response**

21. In March 2022, Plaintiff reported Dr. Javadzadeh's inappropriate conduct to Dr. Raphael Montez, seeking intervention and protection.

22. In May 2022, Plaintiff filed formal complaints with both the University Provost and Vice Provost regarding Dr. Javadzadeh's inappropriate behavior.

23. In July or August 2022, Plaintiff met with the University's new Dean regarding Dr. Javadzadeh's inappropriate behavior.

24. Rather than properly investigating Plaintiff's complaints, the University allowed Dr. Javadzadeh to continue in his role without meaningful intervention or protection for Plaintiff.

25. Dr. Javadzadeh taught classes that no other professor taught and Plaintiff was only able to take the courses with him as the Professor.

26. In September 2022, Dr. Javadzadeh called Plaintiff a "backstabber" while in the classroom with her.

### D. Escalation and Retaliation

27. On May 3, 2023, in a retaliatory action, Dr. Javadzadeh filed a harassment complaint against Plaintiff.

28. On May 18, 2023, just one day before Plaintiff's scheduled graduation, the University placed a hold on Plaintiff's account without proper notice or due process.

29. Despite graduating on May 19, 2023, Plaintiff continued to face harassment and retaliation from Dr. Javadzadeh and the University.

30. In late June or early July 2023, Plaintiff attempted to file a Title IX complaint against Dr. Javadzadeh, but was discouraged from doing so by Mark St. Louis.

31. On July 23, 2023, the University finished investigating Dr. Javadzadeh's harassment allegations and dismissed the violation against Plaintiff, finding that there was "not sufficient evidence to find you responsible for violating St. Thomas University's Community Standards". Plaintiff was told that prior to the beginning of the school year, she would be required to have a non-punitive meeting with the Vice-Provost and Interim Vice-President of Student Affairs to "assist [her] in having a successful experience with [her] graduate studies."

32. Plaintiff began her master's program at the University in August 2023.

33. Before classes began, Plaintiff was reminded that she had to have a non-punitive meeting with the Vice-Provost and Interim Vice-President of Student Affairs before she could begin attending her classes.

34. On or about August 23, 2023, Plaintiff attended the scheduled meeting and was generally informed that she and Dr. Javadzadeh were only to have a student-professor relationship and she was expected to follow the "rules of the classroom." The administration knew that she was taking one of Dr. Javadzadeh's classes.

35. On August 29, 2023, Plaintiff emailed Dr. Javadzadeh about course material and presentation questions and her concerns about Dr. Javadzadeh's continued and unwanted conduct towards her. Nothing in her email(s) violated the Community Guidelines.

36. On September 11, 2023, Plaintiff filed a complaint against John Michalenko, the Interim Vice-President of Student Affairs, and Dr. Javadzadeh. The complaint alleged that Dr. Javadzadeh was harassing her and defaming her to others and John Michalenko was not addressing the accusations raised by Plaintiff and against Plaintiff appropriately.

37. Instead of remaining neutral, the administration collaborated about Plaintiff's complaint in an effort to address how they wished to address her complaint.

### E. Wrongful Expulsion

38. On September 18, 2023, an interaction occurred between Plaintiff and Dr. Javadzadeh, the details of which were mischaracterized by the University after false information was provided by Dr. Javadzadeh.

39. On September 21, 2023, at approximately 10:00 PM, the University sent Plaintiff notice of a mandatory meeting to be held the following morning at 2:00 PM the next morning, providing unreasonable notice of the meeting.

40. When Plaintiff requested the presence of legal counsel at the mandatory meeting, citing her rights under University policies, this request was ignored or denied and the University violated her rights by not providing her sufficient notice to obtain counsel and prepare for the hearing.

41. On September 27, 2023, without conducting a proper investigation or following established disciplinary procedures, the University issued a formal expulsion letter to Plaintiff.

42. The University's expulsion process violated multiple University policies and procedures, including:

    a. Failure to provide proper notification of alleged violations;

    b. Failure to conduct a preliminary conference;

    c. Failure to provide reasonable notice for the mandatory meeting;

    d. Denial of right to legal representation;

    e. Failure to conduct a proper hearing process; and

    f. Failure to follow established disciplinary procedures.

### F. Damages and Ongoing Impact

43. As a direct result of Defendant's actions, Plaintiff has suffered:

    a. Disruption of her educational pursuits;

    b. Damage to her academic and professional reputation;

  c. Loss of work study opportunities;

  d. Emotional distress and mental anguish;

  e. Lost career opportunities; and

  f. Ongoing reputational harm.

44. The University's actions have caused Plaintiff to incur substantial legal fees and costs in attempting to protect her rights and pursue her education.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF TITLE IX – DELIBERATE INDIFFERENCE

45. Plaintiff realleges and incorporates by reference paragraphs 1-44 as if fully set forth herein.

46. Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

47. St. Thomas University receives federal financial assistance and is therefore subject to Title IX.

48. At all relevant times, Plaintiff was enrolled at St. Thomas University as a student.

49. The University had actual knowledge of Dr. Javadzadeh's inappropriate conduct and sexual harassment towards Plaintiff after Plaintiff reported this conduct to a University employee and separately to University administration.

50. Plaintiff had a right to a safe learning environment that allowed her to pursue her academics without harassment, encumbrance, or retaliation.

51. The sexual harassment Plaintiff experienced was so severe, pervasive, and objectively offensive that it deprived her of access to educational opportunities or benefits provided by the school, including:

    a. Creating a hostile learning environment;

    b. Disrupting her academic progress;

    c. Interfering with her work-study opportunities; and/or

    d. Eventually resulting in her wrongful expulsion.

52. The University was deliberately indifferent to the sexual harassment, as evidenced by:

    a. Failing to properly investigate Plaintiff's complaints;

    b. Allowing Dr. Javadzadeh to continue in his role without meaningful intervention or discipline;

    c. Failing to implement protective measures for Plaintiff;

    d. Failing to offer a safe and non-hostile learning environment for Plaintiff;

    e. Misleading Plaintiff to cause her not to file her Title IX complaint;

    f. Retaliating against Plaintiff for making complaints

53. The University failed to offer any supportive measures to Plaintiff to ensure she had a safe and productive educational environment.

54. As a direct and proximate result of Defendant's conduct, Plaintiff suffered educational disruption, loss of academic and career opportunities, loss of future earning capacity, and reputational harm.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE IX

55. Plaintiff realleges and incorporates by reference paragraphs 1-44 as if fully set forth herein.

56. At all relevant times, Plaintiff was enrolled at St. Thomas University as a student.

57. Plaintiff engaged in protected activity under Title IX by:

   a. Reporting sexual harassment to University officials in March 2022;

   b. Filing formal complaints with University administration in May 2022; and by

   c. Seeking protection from continued harassment and a hostile learning environment.

58. The University took materially adverse actions against Plaintiff, including:

   a. Placing a hold on her account in May 2023;

   b. Failing to properly investigate her complaints;

   c. Allowing continued harassment by Dr. Javadzadeh; and/or

   d. Wrongfully expelling her from the graduate program.

59. A causal connection exists between Plaintiff's protected activity and the adverse actions, to include but not limited to:

    a. The temporal proximity between her complaints and the adverse actions;

    b. The pattern of escalating retaliatory conduct; and/or

    c. The pretextual nature of the University's stated reasons for her expulsion.

60. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress including pain and suffering, educational disruption, loss of academic and career opportunities, mental anguish, humiliation and embarrassment, loss of self-esteem, financial loss, and reputational harm.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

61. Plaintiff realleges and incorporates by reference paragraphs 1-44 as if fully set forth herein.

62. At all relevant times, Plaintiff was enrolled at St. Thomas University as a student.

63. Defendant engaged in extreme and outrageous conduct by:

    a. Subjecting Plaintiff to sexual harassment;

    b. Retaliating against her for reporting harassment;

    c. Creating and maintaining a hostile educational environment;

    d. Wrongfully expelling her without due process; and/or

    e. Damaging her academic and professional reputation.

64. Defendant's conduct was intentional or reckless, as demonstrated by:

    a. Repeated instances of harassment despite complaints;

    b. Deliberate indifference to reported misconduct;

  c. Pattern of retaliatory actions; and/or

  d. Willful violation of University policies and procedures.

65. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress including pain and suffering, anxiety and depression, mental anguish, humiliation and embarrassment, loss of self-esteem, and interference with personal relationships.

## COUNT IV
## BREACH OF CONTRACT

66. Plaintiff realleges and incorporates by reference paragraphs 1-44 as if fully set forth herein.

67. At all relevant times, Plaintiff was enrolled at St. Thomas University as a student.

68. A valid contract existed between Plaintiff and the University through:

  a. Plaintiff's enrollment agreement;

  b. The University's policies and procedures;

  c. The Student Code of Conduct; and

  d. The University's Title IX policies.

69. The University breached its contractual obligations by:

  a. Failing to follow established disciplinary procedures;

  b. Denying Plaintiff due process rights;

  c. Failing to properly investigate complaints;

  d. Violating its own Title IX policies;

      e. Retaliating against Plaintiff for raising complaints, and/or

      f. Wrongfully expelling Plaintiff without proper cause or procedure.

70. As a direct and proximate result of the University's breach, Plaintiff has suffered damages including educational disruption, loss of academic and career opportunities, loss of future earning capacity, and reputational harm.

## COUNT V
## NEGLIGENT TRAINING

71. Plaintiff realleges and incorporates by reference paragraphs 1-44 as if fully set forth herein.

72. At all relevant times, Plaintiff was enrolled at St. Thomas University as a student.

73. At all material times, the University had a policy and procedure to train its employees to ensure, amongst other things, that University administration, employees, faculty, and personnel understand how to implement reasonable care to protect its students from harassment, the nature of how University employees and faculty should interact with students, how to both address and investigate a complaint raised by a student or faculty member, how to address Title IX complaints, and how to conduct student disciplinary procedures.

74. Despite having these policies and procedures, at all relevant times, the University did not train its administration, faculty, and staff on some, if not all of these policies and procedures.

75. For those matters that training did occur, the training was insufficient to appropriately equip its administrators, faculty, employees, and staff with the knowledge needed to appropriately address the harassment and retaliation of Plaintiff, how students and faculty should interact, how to address and investigate a complaint, how to address a Title IX complaint, and how to conduct a disciplinary procedure.

76. At all material times, the University had a duty to supervise its employees, faculty, and administrators to ensure they were implementing the training received. The University did not adequately supervise its employees to ensure implementation of the training occurred.

77. The University breached its duty when:

    a. Plaintiff continued to be harassed and retaliated against by University employees;

    b. It placed Plaintiff back in class with the Professor that previously harassed her;

    c. It failed to follow established disciplinary procedures;

    d. It denied Plaintiff due process rights;

    e. It failed to properly investigate complaints;

    f. It violated its own Title IX policies;

    g. It retaliating against Plaintiff for raising complaints, and/or

    h. It wrongfully expelling Plaintiff without proper cause or procedure.

78. As a direct and proximate result of the University's negligent training and implementation, Plaintiff has suffered damages including educational disruption, loss

of academic and career opportunities, loss of future earning capacity, reputational harm, pain and suffering, and emotional distress.

## COUNT VI
## NEGLIGENT SUPERVISION

79. Plaintiff realleges and incorporates by reference paragraphs 1-44 as if fully set forth herein.

80. At all relevant times, Plaintiff was enrolled at St. Thomas University as a student.

81. The University owed Plaintiff a duty to:

    a. Properly supervise its employees, including Dr. Javadzadeh;

    b. Protect students from foreseeable harm; and

    c. Maintain a safe educational environment.

82. The University knew or should have known of Dr. Javadzadeh's inappropriate conduct through direct reports from Plaintiff, complaints to University officials, observable patterns of behavior; and reports from other faculty and staff.

83. The University breached its duty by:

    a. Failing to properly investigate complaints;

    b. Failing to take appropriate disciplinary action;

    c. Failing to deter continued inappropriate conduct; and/or

    d. Failing to implement protective measures.

84. As a direct and proximate result of the University's negligent supervision, Plaintiff has suffered damages including educational disruption, loss of academic and

career opportunities, loss of future earning capacity, reputational harm, pain and suffering, and emotional distress.

## COUNT VII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

85. Plaintiff realleges and incorporates by reference paragraphs 1-44, 61-65, and 71-84 as if fully set forth herein.

86. At all relevant times, Plaintiff was enrolled at St. Thomas University as a student.

87. Defendant acted negligently, as outlined above in Count V (Negligent Training) and Count VI (Negligent Supervision).

88. Plaintiff suffered an intentional tort, as outlined above in Count III (Intentional Infliction of Emotional Distress).

89. As a direct and proximate result of the University's negligent supervision and training, Plaintiff suffered severe emotional distress including pain and suffering, anxiety and depression, mental anguish, humiliation and embarrassment, loss of self-esteem, and interference with personal relationships.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Hannah Spence respectfully requests that this Court enter judgment in her favor and against Defendant, and grant the following relief:

    a. Award compensatory damages in an amount to be determined at trial for all economic losses, including but not limited to lost wages and work-

    study compensation, future economic losses, and costs of alternative education;

b. Award compensatory damages in an amount to be determined at trial for all non-economic losses, including but not limited to emotional distress and mental anguish, loss of educational opportunities, damage to reputation, and pain and suffering;

c. Award punitive damages against Defendant in an amount to be determined at trial;

d. Issue injunctive relief ordering St. Thomas University to:

    i. Reinstate Plaintiff to her graduate program;

    ii. Remove all negative documentation from Plaintiff's academic records; and

    iii. Provide mandatory training for faculty and staff about appropriate student-teacher relationships.

e. Award pre-judgment and post-judgment interest as permitted by law;

f. Award reasonable attorneys' fees and costs pursuant to Title IX and other applicable laws;

g. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL JURY

The Plaintiff, HANNAH SPENCE, demands a trial by jury on all issues so triable.

| | |
|---|---|
| **Dated:** April 17, 2025 | Respectfully Submitted, |
| | */s/ Lisa D. Haba* <br> Lisa D. Haba (FBN 77535) <br> THE HABA LAW FIRM, P.A. <br> 1220 Commerce Park Dr., Ste. 207 <br> Longwood, FL 32779 <br> 844-422-2529 <br> lisahaba@habalaw.com |
| | Michael D. Barber (FBN 92252) <br> THE LAW OFFICE OF MICHAEL D. BARBER <br> 641 West Fairbanks Avenue, Suite 101 <br> Winter Park, FL 32789 <br> Telephone: (407) 890-8000 <br> MBarber@DevotedToJustice.com |
| | *Attorneys for Plaintiff* |

19